## STATE OF CONNECTICUT *v.* EARL ALBERT OSBORN (13506)

Dupont, C. J., and Schaller and Hennessy, Js.

Argued November 2, 1995—officially released May 7, 1996

---

*Jerome J. Rosenblum*, special public defender, for the appellant (defendant).

*Michele Lukban*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Cecelia Wiederhold*, assistant state's attorney, for the appellee (state).

HENNESSY, J. The defendant appeals from the judgment of conviction, after a jury trial, of three counts of attempted sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (1), one count of attempted sexual assault in the third degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-72a (a) (1), one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), four counts of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1), and three counts of risk of injury to a child in violation of General Statutes § 53-21.

The defendant asserts (1) that the trial court abused its discretion by failing to charge on the credibility of a child witness and (2) that the evidence was insufficient to support a conviction on the first and second counts of the fifth substitute information, which alleged attempted sexual assault in the third degree and attempted sexual assault in the first degree.

The jury reasonably could have found the following facts. The defendant intermittently lived with a woman and her four daughters, who were the victims in this

case, during the period in which the various incidents of sexual assault occurred. At the time of trial, May, 1993, the ages of the children were thirteen, eleven, seven and three. The defendant is the father of the two youngest children. Additional facts will be set forth herein as necessary.

I

The defendant first claims that the trial court abused its discretion by failing to give a charge on the credibility of a child witness.[1] During the trial, only the two oldest children testified. The defendant asserts that a charge was necessary with respect to the testimony of the children for the following reasons: the children were testifying about incidents that had occurred two to five years before trial; the children's testimony related to both themselves and their sisters; the children's testimony was the sole evidence with respect to some of the counts; children, generally, are subject to suggestion

---

[1] The defendant requested the following charge: "The capacity and intelligence of a child, her understanding of the difference between truth and falsehood, and her appreciation of the duty to tell the truth, and in a general way, belief that failure to perform that obligation will result in punishment, are ingredients which you should consider in assessing the testimony of a child.

"In certain respects a child is more apt to err than an older person; she is apt to be more amenable to any influence or suggestion which may be made to her by an older person. Their imagination also often misleads them; its product may take on all the semblances of actual fact and they will relate them as such; the sanctity of the oath and the solemnity of legal proceedings may appeal to them less than to an adult. On the other hand, motives of interest and ultimate design or purpose often sway her less than they do an adult.

"As with any other witness, you should consider her demeanor on the stand, her manner of testifying, her capacity to observe and recollect facts, her ability to understand questions put to her, her ability to answer those questions intelligently, whether she impressed you as having an accurate memory and recollection, whether she impressed you as being a truthful individual and any other facts and circumstances bearing on her believability. You should give the testimony such weight as in your judgment it is fairly entitled to receive."

from adults; and the children did not take a formal oath. Instead of a formal oath, the trial court established, through questioning, that both children who testified knew what it was to make a promise and knew the difference between telling the truth and not telling the truth. Each child then promised to tell the truth.

"The prevailing view . . . is that a trial judge retains discretion to determine whether the jury should receive a special instruction with respect to the credibility of a young witness, and, if so, the nature of that instruction." (Internal quotation marks omitted.) *State* v. *James*, 211 Conn. 555, 567–68, 560 A.2d 426 (1989); *State* v. *Owen*, 40 Conn. App. 132, 137, 669 A.2d 606 (1996). In *James*, our Supreme Court recognized that such a charge singles out the child's testimony and tends to infringe on the role of the jury as the sole trier of fact. *State* v. *James*, supra, 568. Furthermore, the court characterized the requested charge in *James* as a cautionary comment on the evidence, rather than a charge on an applicable rule of law, and, as such, recognized that a trial court has broad discretion in commenting on the evidence. Id., 571. Our Supreme Court concluded that the trial court did not abuse its discretion in refusing the defendant's request to charge on the credibility of a child witness. Id.

The facts of this case are similar to those in *James*. In *James*, the child witnesses were both twelve; in this case, the children were eleven and thirteen. In addition, the trial court in this case, as in *James*, commented extensively on the credibility of witnesses in general.[2]

---

[2] The trial court instructed the jury as follows with respect to the credibility of witnesses: "The credibility of witnesses and the weight to be given their testimonies are matters which it is peculiarly your function to determine, however, I may properly make certain suggestions to you. No fact is, of course, to be determined merely by the number of witnesses testifying for or against it. It is the quality not the quantity of the testimony which controls. In weighing the testimony of a witness you should consider his or her appearance upon the stand. You should try to size him or her up. You

The charge that the trial court refused to give in *James* is virtually identical to the charge requested in this case. *State* v. *James*, supra, 211 Conn. 566–67.

The defendant's argument that children are subject to suggestion does not distinguish this case from *James*. The defendant's other arguments are also unpersuasive. "[T]he trier is free to juxtapose conflicting versions of events and determine which is more credible. *State* v. *Adams*, 225 Conn. 270, 278, 623 A.2d 42 (1993). It is the trier's exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. *State* v. *Hooks*, 30 Conn. App. 232, 239, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993). The trier of fact may accept or reject the testimony of any witness. *State* v. *Cooley*, 24 Conn. App. 489, 490, 589 A.2d 377, cert. denied, 219 Conn. 905, 593 A.2d 131 (1991). The trier can, as well, decide what—all, none, or some—of a witness' testimony to accept or reject. 5 Connecticut Practice, D. Borden & L. Orland, Criminal Jury Instructions (1986) § 32." *State* v. *Martin*, 38 Conn. App. 731, 744, 663 A.2d 1078 (1995). It was the jury's role in this case to consider the evidence, and the jury was free to consider the amount of the evidence offered

should have in mind all those little circumstances which point to his or her truthfulness or untruthfulness. You should consider any personal bias or prejudice he or she may have, whether for or against the state or the defendant. His or her interest or lack of interest, of whatever sort, in the outcome of the trial. His or her ability to observe facts correctly and to remember and relate them truly and accurately. You should test the evidence he or she gives by your own knowledge of human nature and of the motives which influence and control human action. Any facts are admitted or otherwise proved to you, you may well bring them into relation with his or her testimony and see if they fit together with it. In short you are to bring to bear upon it the same considerations and use the same sound judgment you apply to the questions of truth and veracity which are daily presenting themselves for your decisions in the ordinary affairs of your lives. Any conduct or statement of a witness which you find inconsistent with any other conduct or statement of that witness you may consider in weighing the credibility of that witness."

as to each count, whether the evidence came from the victims themselves or from another witness, and the lapse of time between the incidents and trial testimony. The jury received thorough instructions on these matters and was free to weigh all of these factors in determining the credibility of child witnesses.[3]

The defendant's argument that a formal oath helps to ensure truthfulness is also unpersuasive. The defendant does not object to the alternative oath that the trial judge administered, but suggests that the lack of a formal oath affects the credibility of the children. Our Supreme Court has recognized that children are not required to take a formal oath. *State* v. *Rodriguez*, 180 Conn. 382, 390, 429 A.2d 919 (1980). We fail to see how a promise to tell the truth, as opposed to a formal oath, makes a child less likely to tell the truth.

Accordingly, we conclude that the trial court did not abuse its discretion in refusing to charge the jury on the credibility of a child witness.

II

The defendant next contends that the evidence was insufficient to sustain a conviction on either count one or count two of the fifth substitute information. In determining whether the evidence was sufficient to support the convictions, " '[w]e first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts . . . impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom . . . the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt.' " *State* v. *Milardo*, 224 Conn. 397, 402–403, 618 A.2d 1347 (1993).

---

[3] See footnote 2.

## A

Count one alleges that on or about June 19, 1991, the defendant committed the crime of attempted sexual assault in the third degree by breaking down a bedroom door with the intent to force a child to submit to sexual contact. The defendant argues that the evidence was insufficient for the jury to conclude that (1) the incident occurred on or about June 19, 1991, or (2) the defendant intended to force a child to submit to sexual contact.

## 1

The defendant first contends that the evidence was insufficient to establish that the incident involving the allegation that he broke down the girls' bedroom door occurred on June 19, 1991. The information states that the incident occurred *"on or about"* June 19, 1991. (Emphasis added.) The oldest child testified that the incident in which the defendant had broken down the door and stood beside her bed occurred close to the last day of school. This incident took place just before the day that she was questioned at her school about someone's sexually abusing her and was taken to the hospital because of the abuse. The eleven year old testified that she went to the hospital with her sisters to be examined for signs of sexual abuse on her graduation day in 1991. The girls' mother testified that she had gone to the hospital with the girls in June, 1991. Based on the evidence presented, the jury could reasonably have concluded that the incident occurred on or about June 19, 1991.[4]

[1] This court has previously stated that "in a case involving the sexual abuse of a very young child, that child's capacity to recall specifics, and the state's concomitant ability to provide exactitude in an information, are very limited. The state can only provide what it has. This court will not impose a degree of certitude as to date, time and place that will render prosecutions of those who sexually abuse children impossible. To do so would have us establish, by judicial fiat, a class of crimes committable with impunity." *State* v. *Saraceno*, 15 Conn. App. 222, 237, 545 A.2d 1116, cert. denied, 209 Conn. 823, 824, 552 A.2d 431, 432 (1988).

2

The defendant next contends that the evidence was insufficient for the jury to conclude that he intended to commit sexual assault in the third degree when he broke down the bedroom door on or about June 19, 1991. Attempted sexual assault in the third degree requires intentional conduct that constitutes a substantial step toward the commission of compelled sexual contact by use of force. General Statutes §§ 53a-49 (a) (2) and 53a-72a (a) (1). The defendant contends that the evidence was insufficient to establish that the defendant took a substantial step toward the commission of attempted sexual assault in the third degree. "[W]hat constitutes a 'substantial step' in any given case is a matter of degree and a 'question of fact' for the jury." *State* v. *Milardo*, supra, 224 Conn. 404, quoting *State* v. *Green*, 194 Conn. 258, 275, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). "The substantial step must be 'at least the start of a line of conduct which will lead naturally to the commission of a crime . . . .' " *State* v. *Milardo*, supra, 404, quoting *State* v. *Mazzadra*, 141 Conn. 731, 736, 109 A.2d 873 (1954).

The oldest child testified that she was sleeping in a bedroom with her two sisters closest to her age with the door locked. She further testified that she awoke to the sound made when the defendant pushed in the door breaking off the lock. She woke up her sisters, and the defendant then approached the children and stood beside their bed. The girls began to scream and the girls' mother came to the room and chased the defendant out.[5]

The eleven year old testified that her mother had put locks on the doors, but that they did not keep the

---

[5] On the basis of this testimony, the jury could reasonably have found that this incident occurred on or about June 19, 1991. See part II A 1 of this opinion.

defendant out because the defendant broke the locks on more than one occasion. She also testified that the defendant would come into the room at night and try to bother them, would "rub" on her older sister, would touch her older sister's chest and buttocks or would touch her older sister and masturbate. She further testified that as a result of complaints to their mother, the mother gave the oldest child a stick to sleep with at night. The actions of the defendant would cease when the mother entered the room in response to their calls for help. The mother also testified that she had put locks on the doors, and that the defendant had broken three locks on two doors. The mother testified that when she would go into the girls' room at night in response to their calls for help, she would find the defendant in the room without any clothes and with his penis exposed and, on occasion, masturbating. The mother testified that on one occasion she walked into the girls' bedroom and saw the defendant, wearing only a shirt, on top of one of the girls.

With respect to the incident that occurred on or about June 19, 1991, the jury could reasonably have found that the defendant broke down the door and approached the girls' bed, thus taking a substantial step toward the commission of sexual assault. On the basis of this forcible entry and the evidence of the defendant's actions in the girls' bedroom on other occasions, the jury could reasonably have found that the defendant intended to subject one of the girls to sexual contact.

B

Count two alleges that on diverse dates between June 20, 1986, and June 20, 1991, the defendant committed the crime of attempted sexual assault in the first degree by attempting to engage in sexual intercourse with the oldest child. Attempted sexual assault in the first degree requires intentional conduct that constitutes a substan-

tial step toward the commission of compelled sexual intercourse by use of force. General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (1). Sexual intercourse includes vaginal and anal intercourse and may be committed with "an object manipulated by the actor into the genital or anal opening of the victim's body" and includes digital penetration. General Statutes § 53a-65 (2); *State* v. *Hermann*, 38 Conn. App. 56, 60, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995). The defendant contends that the state failed to proffer sufficient evidence of intent.

With respect to the charge of attempted sexual assault in the first degree, the information alleged that on diverse dates between June 20, 1986, and June 20, 1991, the defendant attempted to engage in sexual intercourse with the oldest child by the use of force or the threat of use of force that reasonably caused her to fear physical injury to herself. The evidence shows that, on at least one occasion, the defendant forcibly attempted to pull down the victim's clothes and to reach her vagina with his hand. The victim successfully thwarted his efforts by placing her hand over her vagina. The evidence reveals that on another occasion, the defendant forcibly attempted to have anal intercourse with the oldest child, but was unsuccessful.

The intent of an actor may be inferred from the accused's conduct and is a determination for the trier of fact. *State* v. *Milardo*, supra, 224 Conn. 403. The jury could reasonably have concluded on the basis of the evidence presented that the accused reached for the child's vagina with his hands and attempted to insert his penis into her anus. The jury could also have concluded that the accused would have committed the crime of sexual intercourse if the victim had not thwarted his efforts. We conclude that sufficient evidence existed for the jury to conclude beyond a reason-

able doubt that the defendant had the requisite intent to commit sexual assault in the first degree.

The judgment is affirmed.

In this opinion the other judges concurred.